ANTHONY J. DREXEL et al. *v.* ELIZA A. PEASE, as Executrix, etc., et al., Respondents, THE MECHANICS' NATIONAL BANK et al., Appellants.

P., a merchant doing business in New York, and St.A., a merchant in France, entered into a contract which, after reciting that D., the owner and packer of a certain brand of sardines was willing to give them the monopoly thereof, stated the agreement of the parties to be that they were to advance eighty per cent of cost of each invoice as forwarded from the factories; each to advance one-half; the sardines to be shipped to P. and sold, and the net profits to be divided equally between the parties and D. In pursuance of the contract, sardines were shipped to P., who borrowed of plaintiffs, a firm of bankers, the forty per cent agreed to be advanced by him. P. failed and made an assignment for the benefit of creditors. D.

assigned his interest to St.A. Various creditors of P. brought actions against him, and upon attachments issued therein the sardines so sent were levied upon, as were also accounts for sardines sold. In an action to enforce an alleged banker's lien for the advances so made to P., a receiver was appointed, to whom was paid the proceeds of collection of accounts and of sales of the goods. *Held*, that the contract did not import to be a sale, but a joint enterprise; that St.A. had in equity a title to the goods or their proceeds superior to that of the individual creditors of P., and that this equity attached to the funds in the receiver's hands.

The complaint alleged and the answers admitted that St.A. claimed an interest in the fund. His answer set forth the facts of the transaction and characterized P. as his selling agent, instead of a party to the joint enterprise. The trial court disregarded the variance. *Held*, that no error was committed in this respect which would warrant an interference with the judgment.

An interlocutory judgment was rendered adjudging that the amount of plaintiff's claim be paid out of the fund, and providing for a reference to ascertain and report as to certain facts, one of which was what portion of the fund in the receiver's hands was realized from the goods shipped to P. under the contract; an appeal was taken from so much of the judgment as directed a reference, which was dismissed. Upon the hearing before the referee it was stipulated by the attorneys for all the parties that the referee "may refer *ad libitum* to the printed case on appeal * * * to ascertain any fact." This contained evidence given before a referee upon whose report the interlocutory judgment was rendered, which was received by him, under objection and exception, tending to show that the whole fund was derived from sales of goods shipped under the contract. It did not appear that any rulings upon the questions so presented were asked for or made by the Special Term on the final hearing. Said court found that all the fund was realized from such sales. *Held*, that the referee had no power to make a decision on these questions, and as the Special Term need not have passed upon them, the exceptions were not available here; that the evidence was properly considered by the trial court, and as it justified the finding, it could not be held here that said finding was without evidence.

Also *held*, that the court had power to direct the reference as provided for in the interlocutory judgment. (Code Civ. Pro. § 1013.)

(Argued October 13, 1891; decided December 1, 1891.)

APPEALS from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 29, 1890, which affirmed a judgment entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Horace E. Deming* for appellants. On the vital points of indebtedness, amount of indebtedness and identity of the open accounts claimed, with the proceeds of goods shipped by St.-Amant, there is no legal evidence whatever. (*Doe* v. *Perkins*, 3 T. R. 749; Greenl. on Ev. §§ 436–439; 2 Phil. on Ev. 413; 1 Stark. on Ev. 154, 155.) The reference in this action was beyond the power of the court; the General Term was in error in dismissing our appeal from Mr. Justice Lawrence's interlocutory judgment or order directing the reference, and all proceedings under said order of reference were a nullity. (Code Civ. Pro. §§ 1013, 1015.) Between St. Amant's pleadings and his proof there was a fatal variance. (*Kelsey* v. *Western*, 2 N. Y. 506, 507; *Bailey* v. *Rider*, 10 id. 369, 370; *R. E. Bank* v. *Eames*, 3 Abb. Ct. App. Dec. 83; *Wright* v. *Delafield*, 25 N. Y. 266, 268; *Ballau* v. *Parsons*, 11 Hun, 602, 605; *Arnold* v. *Angell*, 62 N. Y. 508, 510; *Stevens* v. *Mayor, etc.*, 84 id. 296, 304, 305; *Hudson* v. *Swan*, 83 id. 553; *Southwick* v. *F. N. Bank*, 84 id. 420; *Brazill* v. *Isham*, 12 id. 9; *Bryant* v. *Stewart*, 83 id. 272; *Hall* v. *U. S. R. Co.*, 30 Hun, 375; *Williams* v. *Ins. Co.*, 54 N. Y. 577; *Mann* v. *Fairchild*, 3 Abb. Ct. App. Dec. 155; *Bradley* v. *Aldrich*, 40 N. Y. 511; *Day* v. *Town of New Lots*, 107 id. 148; *Romeyn* v. *Sickles*, 108 id. 650; *Clark* v. *Post*, 113 id. 27.) The banks are entitled to retain the merchandise and proceeds of merchandise in Pease's possession attached by them. (*Ex parte White*, L. R. [6 Ch. App.] 393; *Ludden* v. *Hazen*, 31 Barb. 650; *Bonesteel* v. *Flack*, 41 id. 435, 440; *Devlin* v. *O'Neil*, 6 Daly, 307; 68 N. Y. 622.) The suggestion of a partnership in relation to any of this property, is irrelevant. (*Richardson* v. *Hughitt*, 76 N. Y. 55; *Moore* v. *Huntington*, 7 Hun, 425: *Osbrey* v. *Reimer*, 41 Barb. 265; 51 N. Y. 630; *Eager* v. *Crawford*, 76 id. 97; *Burnett* v. *Snydero*, 81 id. 550; Bates on Partnership, § 47; *Curry* v. *Fowler*, 87 N. Y. 33; *Cassidy* v. *Hall*, 97 id. 159.)

*O. J. Wells* for respondents. The banks and assignee merely stand in Pease's shoes. They can only reach Pease's interest

and have no better claim than he had. (*Knatchbull* v. *Hallett,* L. R. [13 Ch. Div.] 723; *Hooley* v. *Gieve,* 9 Abb. [N. C.] 43; *Sadler's Appeal,* 87 Penn. St. 158; *In re LeBlanc,* 14 Hun, 9; *Van Alen* v. *A. N. Bank,* 52 N. Y. 4; *Eldridge* v. *Troost,* 3 Abb. [N. S.] 20.) The allegations of the complaint are strictly proved. Pease advertised himself as agent, signed his name as such and placed the name "agent" upon his letter-heads and sign, and was so regarded by the other parties in interest. Even if he were a partner, he was the agent of his copartners. (Collyer on Part. 269, §§ 139, 412; Story on Part. § 1; *Winship* v. *Bank of U. S.,* 5 Pet. 520.)

O'Brien, J. The controversy which resulted in this appeal grows out of a written contract made in March, 1883, between Joseph M. Pease, a merchant doing business at the time in the city of New York, and George St. Amant, a merchant doing business in Paris, France. Before making any further reference to the terms of the contract it is necessary to get a clear idea of the proceedings through which St. Amant and the parties representing Pease are before this court. In August, 1884, Pease failed and made an assignment for the benefit of his creditors. Immediately after this failure the defendant, the Mechanics' National Bank, and the National City Bank of New York as creditors, instituted suits and proceedings against him, in which attachments were issued and levied upon goods in his possession and upon a large number of open accounts due to him. In these suits the goods were reduced by the banks to possession and many of the accounts collected. It seems that these proceedings and whatever lien the banks obtained upon the property preceded the assignment. The goods seized, it is claimed, were shipped to Pease by St. Amant under the contract and the accounts collected represented goods shipped and sold by Pease under the same arrangement. St. Amant claimed that the title to these goods and their proceeds remained in him and did not, under the agreement, pass to Pease or his creditors. The plaintiff, Drexel, Morgan & Co., by means of a letter of credit, furnished to Pease the

funds which he advanced to St. Amant under the agreement, and they claimed a bankers' lien upon the goods and their proceeds by virtue of the advances to and arrangement with Pease, which has been found. The plaintiffs brought this action to enforce this lien and made the attaching banks, the assignee of Pease, and St. Amant parties defendants, who all answered. In the meantime, with the consent of the parties, a receiver was appointed in the action of the fund representing the collected accounts and the proceeds of the goods which had been attached and subsequently sold. The case having been brought to trial at Special Term, an interlocutory judgment was entered directing the receiver to pay to the plaintiff the sum of $4,264, with interest thereon and costs out of the fund in satisfaction of their lien, which was adjudged. This disposed of the plaintiffs' interest in the controversy and none of the defendants now seem to raise any question as to this part of the judgment. The court, however, did not then pass upon the conflicting claims to the rest of the fund by St. Amant on the one hand and the banks as attaching creditors on the other, but a provision was inserted in the judgment providing for a reference to ascertain the particular portion of the goods or the proceeds in the receiver's hands received by Pease from St. Amant under the agreement, and also whether the judgments obtained by the banks against Pease were for an individual debt due from him or for advances made to him on account of the business under the agreement through which the goods came from St. Amant, and that all other questions between the defendants be reserved until the coming in of the report upon the reference. From that part of the judgment directing a reference the banks and the assignee appealed to the General Term, but the appeal was dismissed. The reference proceeded and the referee reported that all the goods and their proceeds that came to the hands of the receiver were received by Pease from St. Amant under the agreement and all the accounts collected were for the purchase of like goods that Pease had received and sold under the same conditions. That the indebtedness of Pease to the banks was on his individual

account, and that the lien of the banks did not attach till St. Amant was paid. That there was due to him September 16, 1884, for goods delivered under the agreement, after deducting all advances, expenses or profits, the sum of $23,630.41. That the receiver had realized from the goods and accounts that came to his hands the sum of $24,924.75. That he had paid the plaintiffs, on account of their bankers' lien, pursuant to the judgment of the court, $6,053, and in other expenses $532.60, leaving in his hands a balance of $18,338.49, subject to his commissions and certain disbursements. The case came on for trial again at a Special Term held by another judge. The trial was had mainly, if not entirely, upon the report of the referee, the proofs reported by him to the court, and exceptions to his findings. The court overruled the exceptions and substantially adopted the findings of the referee and adjudged that St. Amant was entitled to the whole fund in the hands of the receiver. Upon this decision, final judgment was entered and, upon appeal, was affirmed by the General Term. The banks and the assignee appeal to this court from the judgment of affirmance, and they also bring up for review the order of the General Term dismissing the appeal from that part of the interlocutory judgment directing a reference of the special questions above stated. We are asked to reverse the judgment and order upon substantially three grounds:

1. That the contract between St. Amant and Pease constituted a sale to the latter of the goods, and that consequently the fund in the receiver's hands is bound by the lien of the attachments.

2. That the finding of the court that the fund was the proceeds of the goods received by Pease from St. Amant under the contract is without any competent evidence to support it.

3. That the court had no power to refer the questions before stated, and that the General Term should have reversed that part. of the interlocutory judgment instead of dismissing the appeal.

The correspondence between St. Amant and Pease resulted, as the court below found, in the following contract, to which reference has been made in the foregoing statement:

" Your favor of fifth inst., is duly at hand. I had an interview with the packer (Dumagnou) and owner of the Billett Brand, who is willing to give us the monopoly of these sardines, the agreement to be as follows:

" We to advance 80% of cost of each invoice as they are forwarded from the factories, this advance to be halved by you and I.

" As a basis, we take the amount of 1,000 of American $\frac{1}{4}$s, and 4,000 cases of 100 low $\frac{1}{4}$s, to be handled during the season, we to have the liberty of stopping shipments and annulling the agreement at any time during the season, if we find it unprofitable or have any other good reason.

" Interest to run on the account of 6% per annum. No commission to be charged by us nor profit to be added by him. You to charge brokerage only when actually paid by him.

" Goods to be sold from wharf, unless some very good reason should exist for doing otherwise.

" Any loss occasioned by failure of your buyers to be supported in thirds, one-third each by you, the owner of the brand and myself.

" The total of net proceeds of all accounts sale, compared with the total cost, shall determine the profit of the season, which shall be divided in thirds in same manner as stated in previous paragraph. If this should show a loss, this loss is borne by the packer.

"There are about 500 cases of tins cut to size of old American $\frac{1}{4}$, which will be sent on first, in order to get as many in as possible under the four per cent duty.

" In studying the foregoing, you will see that we are entirely in your hands as to the result, and without my knowledge of your straight-forwardness and business integrity through many years, I would never have suggested you to my friend here. I hope to have your early answer, and I trust this will lead to something in a larger business way between us."

This language of St. Amant does not import a contract of sale but, as the court below held, a joint enterprise between Pease, St. Amant and the packer Dumagnou, for the shipment and sale of sardines and after payment of advances and

expenses the division of the profits between them in equal parts. The interest of Dumagnou was assigned to St.Amant who, as the representative of the joint ownership and enterprise, had in equity a title to the goods or their proceeds, superior to that of the individual creditors of Pease. But the learned counsel for the banks insists that this was not the claim that St.Amant set up in his answer and perhaps upon a strict construction of the pleading this may be true. The complaint which was the pleading of Drexel, Morgan & Co., stated that St.Amant claimed an interest in the goods. The banks and the assignee admitted this allegation and St.Amant set forth in his answer the facts of the transaction according to what was perhaps another view of their legal effect, in which Pease was characterized as his selling agent in New York. The trial court disregarded the variance and the General Term agreed with it. We do not think that any error was committed in this respect that would warrant us in interfering with the judgment. The superior equity of St.Amant attached to the fund in the receiver's hands. (*I. & T. N. Bank of N. Y.* v. *Peters*, 123 N. Y. 272; *Knatchbull* v. *Hallett*, L. R. [13 Ch. Div.] 723; *Van Alen* v. *Am. Nat. Bank*, 52 N. Y. 4; *Sadler's Appeal*, 87 Penn. 158.)

At the close of the testimony before the referee, the attorneys for all the parties stipulated and consented that the referee "may refer *ad libitum* to the printed case upon appeal in this action to ascertain any fact for his information." The printed case here referred to was that upon appeal from that part of the interlocutory judgment directing the reference and contained everything in the present record except the proceeding before the referee and subsequent thereto. Much evidence was given before the referee with a view of showing that the fund was derived from sales of goods that were shipped by St.Amant under the agreement, and many objections were made and exceptions taken to some parts of it. But the referee had no power to make a decision on any of these questions which this court can review and the record does not show that any ruling was made upon them by the court that made the final decis.

ion in .the case.   It was not asked to pass upon any exception
to matters of evidence or to strike out any improper answer
given.   The stipulation, above referred to, carried with it to
the Special Term every fact and every paper that was before
the referee.   In this condition of the case we cannot hold that
the finding made by the trial court that the fund was derived
from sales of goods sent by St.Amant to Pease under the
agreement was without evidence.   On the contrary we think
that the record contains evidence sufficient to justify the
finding.   In regard to the order of reference it does not
appear that any question was raised at the trial before the
Special Term in regard to any irregularity or want of power
to make it when the report of the referee was before it for
consideration.   The appellants took the chances then of a
favorable result for them upon the report which they now
claim was unauthorized and, without any objection apparently,
took the same chances of a favorable report from the referee.
Moreover, this provision of the interlocutory judgment was
not specifically excepted to.   Under these circumstances it is
reasonable to conclude that the trial proceeded without much
regard to the question whether the reference was within the
power of the court or not.   But we think the court had power
to direct the reference.   By the last clause of section 1013 of
the Code power is given in such a case as this to order a refer-
ence " to report the referee's findings upon one or more specific
questions of fact involved in the issue."   The other references
provided by this section are to hear, try and determine.   The
last clause confers power upon the court to refer one or more
specific questions of fact, not to determine, but to report upon
for the information of the court.   That is all that was done
in this case.   The Special Term was not bound by any finding
or ruling of the referee.   It could adopt the findings or from
the testimony make new ones.   On the whole we are of
opinion that no material error was committed in the disposi-
tion made of the case and that the judgment and order should
be affirmed, with costs.

   All concur.

   Judgment affirmed.