FRANCIS A. DREXEL et al., Respondents, *v.* ELIZA A. PEASE, as Executrix, etc., Impleaded, etc., Appellant.

The ownership by a commercial correspondent, who has advanced his own money or credit for a principal for the purchase of property, and has taken bills of lading in his own name, extends so far only as is necessary to secure him for the advances so made; it will not permit of his acquiring, although agreed to by the principal, a general lien upon the property, for other and prior indebtedness, as against one owning an interest in the property.

Two merchants, P., doing business in New York, and St.A., in France, entered into a contract which, after reciting that D. was willing to give to the parties a monopoly of a certain brand of sardines, contained an agreement that each of the parties was to advance forty per cent of the cost, the sardines to be shipped to P. for sale; the net proceeds to be divided. To raise the forty per cent so to be advanced by him, P, procured from plaintiffs, a banking firm, letters of credit, which authorized drafts to be drawn upon them "for the cost of the merchandise," advice thereof to be given to plaintiffs, to be accompanied by abstracts of invoices and bills of lading to their order. By virtue of these letters of credit, St.A. drew upon plaintiffs the percentage of the cost of purchases agreed to be advanced by P., and caused the invoices and bills of lading to be made out and forwarded to plaintiffs' firm, as required, which drafts were accepted and paid by it. By the agreement between P. and said firm, he gave it a specific lien on the goods purchased to the amount so advanced, and also pledged to them, as security for any other indebtedness, "any surplus that may remain, either in the goods or the proceeds thereof, after providing for the acceptances under this credit." Such a surplus having arisen, plaintiffs claimed the right to retain it, to apply upon a prior and independent indebtedness of P. *Held*, that said claim was untenable as against St.A.; that he had an equitable title at least to all beyond P.'s share, which was superior to the general lien of plaintiffs; also, that St.A. was not estopped, by the fact that he caused the invoices and bills of lading to be made out to the order of plaintiffs' firm, from claiming his interest, or from asserting that the acceptances were not for the full cost of the goods; that the words of the agreement, authorizing drafts "for the cost of merchandise," did not imply that they were to be for the full cost, but the intent was to limit the amount so that in no event the draft should exceed the cost, and that it must be on account thereof.

*It seems*, that even assuming that under the agreement there was an implied representation that the drafts drawn were for the full cost of the merchandise, St.A. would still be entitled to assert his interests as against

plaintiffs' general lien for prior advances to P. arising out of another transaction with another party, and not made on the faith of the goods in question, as plaintiffs parted with no value beyond their specific lien by virtue of any such implied representations.

(Argued March 23, 1892; decided April 12, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 29, 1890, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term and dismissed the defendant's appeal.

This action was brought by plaintiffs, who were bankers doing business in the city of New York, to enforce a lien they claimed to have upon the proceeds of a quantity of sardines. One Pease, who was a merchant in New York, entered into a contract with one St.Amant, a merchant in France, which, after reciting that one Dumagnou was willing to give to them a monopoly of a certain brand of sardines, provided that each of the parties should advance forty per cent of the cost, and the sardines be shipped to Pease for sale and the net profits be divided. In order to raise the forty per cent he was to advance, Pease procured from plaintiffs letters of credit, which authorized drafts to be drawn upon them " for the cost of the merchandise, advices of which were to be given plaintiffs, with abstracts of invoices and bills of lading to their order. St.Amant, through these letters of credit, drew upon plaintiffs for the percentage of the cost of purchases agreed to be advanced by Pease, and caused the invoices and bills of lading to be made out and forwarded to plaintiffs as required, and said drafts were accepted and paid by them. Pease entered into an agreement with plaintiffs by which he gave their firm a specific lien on the sardines purchased to the amount of the advances, and he also pledged, as security for any other indebtedness, " any surplus that may remain, either in the goods or the proceeds thereof, after providing for the acceptances under this credit." Pease afterwards became insolvent and made an assignment for the benefit of his creditors. Dumagnou assigned his interest in the sardines to St.Amant. Attach-

ments were obtained in various actions brought against Pease by his creditors, and the sardines which Pease still had on hand and the accounts for those he had already sold were levied upon thereunder. A receiver was appointed in this action, and the accounts for sardines sold and the proceeds of subsequent sales were paid over to him.

After providing for plaintiffs' acceptances from the sums in the receiver's hands, a surplus remained which plaintiffs claim, under their agreement with Pease, they have a right to retain and apply upon a prior and independent indebtedness of Pease to them.

*Oliver J. Wells* for appellant. It was error to allow the amount due under the Cohn letters of credit. (Laws of 1830, chap. 139; *Hazard* v. *Fiske*, 83 N. Y. 287; *Dows* v. *Kidder*, 84 id. 121; *Stevens* v. *Wilson*, 4 Den. 472; *Dorrance* v. *Dean*, 106 N. Y. 204; *Wyckoff* v. *Anthony*, 90 id. 442.) The court erroneously held that St. Amant having used the letter of credit, was estopped and was bound by the terms on which it was procured. Estoppel only applies when the party to be estopped has full knowledge of the facts. (*Bank of Toledo* v. *Shaw*, 61 N. Y. 298.)

*F. S. Bangs* for respondents. By the appellant's own acts the ownership of the property became vested in the plaintiffs. (*F. & M. Bank* v. *Logan*, 74 N. Y. 568; *Same* v. *Atkinson*, 74 id. 587; *Same* v. *Hazelton*, 78 id. 104; *Moors* v. *Kidder*, 106 id. 32.) He should not thereafter be permitted to allege or prove as against the plaintiffs that the transaction was not a sale and delivery of the goods, or that the acceptance and payment did not constitute a full payment of the cost. (*Storrs* v. *Barker*, 6 Johns. Ch. 166; *C. N. Bank* v. *National Bank*, 50 N. Y. 576; *Muller* v. *Pondir*, 55 id. 334, 335; *Thompson* v. *Simpson*, 128 id. 288.) The delivery of the bills of lading by the plaintiffs to Pease under the terms of the trust receipts did not change the relations or rights of the parties. (*Moors* v. *Kidder*, 106 N. Y. 46.)

PECKHAM, J.  The judgment in this action gave plaintiffs a specific lien on the merchandise (principally sardines) upon which they made advances, up to the full amount of those advances. In addition to the specific lien the judgment awarded the plaintiffs a general lien upon the surplus in the merchandise or the proceeds thereof remaining after providing for the payment of their advances, as security for the other indebtedness of Pease's firm to the plaintiffs.

St.Amant, one of the defendants herein, is dissatisfied with the latter provision in such judgment. The cause of his dissatisfaction lies in the fact that he has an equitable title to and interest in this merchandise, which is as he claims superior to any lien of the plaintiffs thereon, excepting the specific lien for the advances actually made on such merchandise by the plaintiffs.

The agreement by which Pease gave to plaintiffs a specific lien on all merchandise to an amount equal to the sum advanced on the same by plaintiffs, as stated in such agreement, is one with which no fault is found by any of the parties hereto, and no one disputes plaintiffs' rights as regards their lien on such merchandise to the extent above indicated.

The trouble comes by reason of the clause in the agreement with the plaintiffs with reference to all the letters of credit, in which Pease says : " And I further pledge to you as security for any other indebtness of my firm to you any surplus that may remain either in the goods or the proceeds thereof, after providing for the acceptances under this credit." The sardines which made up the greater part of the merchandise in question on this appeal, were procured pursuant to the provisions of a contract which was under consideration by us on an appeal in this action from that part of the judgment which adjusted the conflicting claims of the defendants between themselves upon the merchandise or the proceeds arising from a sale thereof. Upon that appeal we held that under this contract one Dumagnou, who was the packer of the sardines, together with St.Amant, the one who made the purchase in France, and the defendant Pease, were engaged in a joint enterprise for the

shipment and sale of these sardines and after payment of expenses the profits were to be divided equally between them. We also held that St.Amant (to whom Dumagnou assigned his interest), had an equitable title to the merchandise which was superior to that of the individual creditors of Pease and that such equity attached to the funds in the receiver's hands, which were the proceeds of the sale of such merchandise. (*Drexel* v. *Pease*, 129 N. Y. 96.) The question now to be determined is whether such equitable title is not also superior to the general lien of the plaintiffs. Can plaintiffs hold the merchandise for any sum other than the advances made by them on its security. If all the facts were known to plaintiffs or their correspondents in Paris at the time when the latter advanced the money on the sardines, it is plain that they would have a specific lien thereon up to the amount of their advances on them, and I think it equally plain they would have no general lien thereon as against the defendant St.Amant to secure plaintiffs for other and prior indebtedness of Pease's firm upon letters of credit issued by plaintiffs at request of Pease to other parties.

At least they would have no such lien upon anything more than the share of Pease in the goods. This would be so because the other interest or shares in the merchandise would not belong to Pease, and as the plaintiffs, under the supposition would be aware of that fact, the agreement of Pease to give plaintiffs a general lien for other and prior indebtedness not incurred upon the faith of the merchandise, upon an interest therein which they knew he did not own, would be worthless as against those who did own such interest and had not consented to such lien.

The history of the "other indebtedness," which plaintiffs desire to hold the St.Amant merchandise as security for, is in brief this: The defendant Pease had different correspondents in Europe, wholly disconnected with each other, who were purchasing merchandise for him at different places. At about the time of the issuing of the letters of credit to St.Amant of Paris by plaintiffs at request of Pease, the plaintiffs also, upon

like request, issued letters to the firm of C. Richard Cohn & Co. of Bordeaux. The latter purchased merchandise, drew drafts upon Drexel, Harjes & Co. in payment for the cost thereof, and gave invoices and bills of lading to plaintiffs' order in the same manner as in the case of St. Amant, and plaintiffs advanced the money upon such merchandise on the faith thereof and on the invoices and bills of lading to their order. In the case of the Cohn merchandise, the plaintiffs will be unable to get back the full amount of their advances thereon unless they are allowed a lien on the surplus of the St. Amant merchandise after paying their advances made thereon and before any other claim upon such surplus is allowed. This is claimed by plaintiffs by virtue of the agreement for a general lien above referred to.

Plaintiffs' advances upon the merchandise purchased under the Cohn letters of credit were not made on the faith or credit of the merchandise purchased under letters issued to St. Amant, and as it does not appear that the latter was aware that Pease had attempted to pledge his (St. Amant's) property as security for Pease's general indebtedness, it cannot be argued that St. Amant consented to such pledge when he used the letter of credit to raise funds to pay Pease's share of the purchase-money for the sardines. The plaintiffs, however, claim there are facts (not yet stated) which form an equitable estoppel, preventing the defendant St. Amant from setting up his title to the merchandise as against the plaintiffs, and under which the plaintiffs are entitled to claim their general lien upon it. The plaintiffs state that the letters of credit issued by them to both St. Amant and Cohn upon request of Pease, and which constituted the only authority for St. Amant's or Cohn's drafts upon Drexel, Harjes & Co. of Paris, who were plaintiffs' correspondents and agents herein, provided that the drafts should be drawn in France "*for the cost of the merchandise* to be exported to an Atlantic port, and advice thereof to be given to Messrs. Drexel, Harjes & Co.; the advice to be accompanied by abstracts of invoices and bills of lading to our order." St. Amant, instead of drawing for the full and entire cost of

the merchandise, drew only for forty or fifty per cent thereof, pursuant to the contract above mentioned between him and Pease, and the provisions of which have already been construed by us on the former appeal herein.   This forty per cent represented only the amount of the cost which was to be paid by Pease, the balance of such cost in the case of the sardines being paid by and divided between Dumagnou and St.Amant, the latter paying forty and the former the remaining twenty per cent.   The court found that "St.Amant, on receiving invoices of said goods from Dumagnou, advanced thereon eighty per cent of the amount of said invoices, and thereafter delivered the bill of lading and invoices to Messrs. Drexel, Harjes & Co., and received their acceptances for forty per cent of the invoice value of the merchandise, the cost of stamps and certificates being in some cases added."   This was pursuant to the agreement between plaintiffs and Pease, by which it was provided that the parties to whom the letters were issued and who purchased the merchandise should, when the drafts were drawn, give advice thereof to Drexel, Harjes & Co., and the advice was to be accompanied by abstracts of invoices and bills of lading to plaintiffs' order, remaining bills of lading with certified invoices and consul's certificates to be sent to plaintiffs direct by vessel.

From these facts the plaintiffs claim that St.Amant, by his own act, vested the ownership of the property in the plaintiffs, and under such circumstances as were equivalent to a representation by him that any claim of his for the cost of merchandise had been satisfied.   St.Amant cannot, as plaintiffs claim, be now permitted to prove as against them that the transaction was not a sale and delivery of the goods, or that the acceptance and payment of the drafts drawn on them or their agents by St.Amant, did not constitute a full payment of the whole cost of such merchandise.   They also say that Pease's right to pledge the merchandise generally for all his indebtedness to plaintiffs is beyond question, if his ownership were conceded or proved, and St.Amant is bound to concede such ownership as to the plaintiffs in view of his tacit representa-

tion that the drafts were for the cost (meaning the full cost) of the merchandise.

We think this claim is inadmissible.

The cases in regard to the vesting of the title to property in the bankers or others who advance money upon such property and take bills of lading therefor to their order, do not go the length necessary for the plaintiffs here.

As stated in those cases the doctrine is that where a commercial correspondent advances his own money or credit for a principal for the purchase of property for such principal, and takes the bills of lading in his own name, looking to the property as security for reimbursement, such correspondent becomes the owner of the property, instead of the pledgee, up to the moment when the original principal shall pay the purchase-price, and the correspondent occupies the position of an owner under a contract to sell and deliver when the purchase-price is paid. This doctrine is stated in *Moors* v. *Kidder* (106 N. Y. 32), and founded upon the cases cited by Finch, J., in that case. Nothing therein gives color to the idea that the correspondent's ownership is of that character which would permit his exaction, even though agreed to by the principal, of a general lien upon the property for other and prior indebtedness of the principal as against one in the situation of St. Amant. The correspondent's position is one of ownership so far only as is necessary to secure him for the advances he made upon the merchandise described in the bill of lading, and in such a case as this he is bound to sell upon receipt of the purchase-price from the principal, or in other words, upon receipt of the amount he advanced upon its credit. In no other sense is the correspondent the owner of the property.

Nor does the wording of the agreement as to the drawing of the drafts *for the cost of merchandise*, give foundation for the inference that the drafts must represent, in all cases, the full amount of such cost.

The language does not bear such interpretation. Its meaning plainly is to limit the amount for which the draft is to be drawn by the cost of the merchandise against which it is

drawn and upon which the advance is to be made. It must not, in any event, be for more than such cost, and it must be on account thereof. Within the limits of the full amount of such cost the draft may be drawn for any sum, so long as it is on account of the cost, and for no other consideration.

That this was the understanding of the parties is also plain. St. Amant advanced, in the first instance, but eighty per cent of the cost of the sardines, and he then took the invoices of the merchandise to the Paris correspondents of the plaintiffs and obtained their acceptances for only *forty per cent of the invoice value of the goods.* There was in such transaction a clear notice to the plaintiffs' correspondents that sixty per cent of the value of the merchandise had not been drawn for, and that there must be some one interested in the merchandise not represented by the draft for but forty per cent of its value.

The practical construction given to · the contract by the parties thereto is at war with the claim now made by the plaintiffs.

If it be assumed, however, that the plaintiffs' later construction is the correct one and that the drafts drawn by St. Amant operated as an implied representation that they were for the full cost of the merchandise, I do not see that the plaintiffs' position is favorably affected, even upon such assumption. They did not alter their position with regard to the Cohn indebtedness already incurred, by reason of any representation, expressed or implied, in regard to the St. Amant merchandise. There is no reason why the fact of St. Amant's interest in the merchandise should not be asserted as against a claim of plaintiffs for a general lien thereon to secure them for the payment of other and prior indebtedness, arising out of another transaction with another person, and which was wholly unconnected with and entirely separate from such merchandise and all representations in regard thereto.

It is too plain for discussion that the plaintiffs, in fact, made no advances to Cohn upon the faith of merchandise which might or might not thereafter be purchased by St. Amant. The advances they made Cohn were made upon the faith of

the merchandise he purchased and which he transferred to them when their agents accepted his drafts and took the invoices and bills of lading for such merchandise in the names of the plaintiffs.    Whether St.Amant would ever thereafter purchase another dollar of merchandise for or on account of Pease, and come to Drexel, Harjes & Co. with drafts for any part or the whole of the cost thereof, was something of, which plaintiffs were, of course, wholly ignorant.    It is idle to say that under such circumstances any advances to Cohn were made upon the faith of property which plaintiffs or their Paris agents knew nothing of, and which St.Amant might never purchase, and which, if he did purchase, they were to make advances on to him at the time he would draw upon their agents.

It is equally plain that the only advances made to St.Amant were made in payment of the drafts drawn for but forty (in some cases fifty) per cent of the cost of that particular merchandise.    They have been repaid those advances.

The agreement for a general lien in favor of plaintiffs upon the St.Amant merchandise to secure them for their prior advances on the Cohn merchandise, has no basis to stand upon when opposed to the equitable title of St.Amant.    As the plaintiffs parted with no value beyond the amount for which they have a specific lien on the merchandise, there is no reason why St.Amant should not be permitted to now show the truth even as against his prior implied representation. The plaintiffs in answer to this statement claim that under their agreement with Pease they, in legal effect, did make advances to Cohn in part, at least, upon the faith of the merchandise purchased by St.Amant.    They say that in view of the agreement for a general lien every draft paid by their correspondents, which was drawn by St.Amant or Cohn, constituted an advance made by plaintiffs without reference to the particular letter of credit upon which the draft might be drawn, and that the consideration was threefold: (1) Pease's engagement to repay ; (2) the engagement that the merchandise purchased should stand as security for the repayment of

the particular draft drawn against it ; (3) the engagement that the merchandise should stand as security for any other indebtedness of Pease, including a prior one.

There is no doubt of the validity of the agreement for a general lien as between the parties to it. The consideration was sufficient, and if the plaintiffs had in fact made the advances to Cohn, not only upon the faith of the merchandise purchased by him and upon his delivering the invoices and bills of lading to plaintiffs' order, but also upon the faith of merchandise already purchased by St.Amant, it might, perhaps, be claimed on their part that plaintiffs were entitled to their general lien upon the St.Amant merchandise as security for their claim by reason of the loss on the Cohn merchandise. This is not the case, however, and a discussion of the rights of the parties upon that assumption is beside the question. The Cohn indebtedness had no connection with the St.Amant merchandise.

The judgment must, therefore, be modified by deducting from the amount of the plaintiffs' recovery the amount of the deficiency arising upon the Cohn merchandise, being $2,249,79, with interest from the time of the entry of such judgment, and also by reducing the extra allowance to the amount of five per cent on the plaintiffs' modified recovery, and the defendant St.Amant is entitled to recover his costs of appeal as against the plaintiffs herein.

All concur.

Judgment accordingly.