(31 Abb. N. C. 21.)

## DENNISTOWN et al. v. BARR et al.

(Supreme Court, Special Term, New York County.   July, 1893.)

PLEDGE—SECURITY FOR ADVANCES—TITLE OF PLEDGEE.

Plaintiffs, London bankers, gave to defendants, New York merchants, letters of credit for the purchase of coffee in Brazil by bills of exchange drawn on plaintiffs, and accompanied by bills of lading in the name of plaintiffs as consignees of the coffee purchased.   The bills of lading were sent by plaintiffs to their New York agent, who indorsed and delivered them to defendant under a special agreement by which defendant acknowledged receipt of the coffee, and agreed to hold it on storage as plaintiffs' property, with liberty to sell, and pay over the proceeds to plaintiffs, until the bills of exchange should be provided for, declaring that the intention of the agreement is "to protect and preserve unimpaired the ownership" of plaintiffs' agent in the coffee.   *Held*, that the title to the coffee or the proceeds thereof remained in plaintiffs as against defendants' assignee for the benefit of creditors.

Action by Alexander Dennistown and others, against Thomas M. Barr and others, to obtain possession of the proceeds of certain coffee, or to have them placed in the custody of the court.   Judgment for plaintiffs.

Before CLIFFORD A. HAND, Esq., Referee

Carter & Ledyard, for plaintiffs.

HAND, R.   The facts in this case are free from dispute, and are reducible to simplicity of statement.   In order to obtain funds for the purchase of coffee in Brazil, Thomas M. Barr & Co., New York merchants, obtained from the plaintiffs, London bankers, through Mosle Bros., their New York agents, two letters of credit, authorizing the correspondents in Brazil of Thomas M. Barr & Co. to use the credits for the purchase of the coffee, by bills of exchange drawn by them upon the plaintiffs, accompanied by invoices and bills of lading.   These bills of lading were to be in the name of the plaintiffs as consignees.   In obtaining the letters of credit from the plaintiffs, Thomas M. Barr & Co. agreed, among other things, to supply the New York agents of the plaintiffs with funds to meet the plaintiffs' acceptances of the bills of exchange at least 15 days prior to their maturity, together with their commission of three-fourths of 1 per cent., which was the stipulated compensation to the plaintiffs for the use of the credits.   Accordingly, 2,000 bags of coffee were purchased in Brazil, and shipped by the steamer J. W. Taylor, and in due course the bill of exchange drawn against it was accepted in London by the plaintiffs, who received the accompanying invoice and bill of lading.   Afterwards another 2,000 bags of coffee were in like manner shipped by the steamer Nasmyth, with a like acceptance of the bill of exchange drawn against it, and the like receipt by the plaintiffs of bills of lading.   These bills of lading were forwarded by the plaintiffs to their New York agents, who indorsed and delivered them to Thomas M. Barr & Co., upon special agreements, called "red-letter receipts," whereby Thomas M. Barr & Co. acknowledged receipt of the coffee from the plaintiffs' New York agents, Messrs. Mosle Bros., and agreed with the latter to "hold the same on storage as their

property, with liberty to sell the same, and on such sale to pay over or deliver the proceeds to them until the bills of exchange drawn on Messrs. Dennistown, Cross & Co., of London, for the purchase money of the said goods, shall have been remitted for by us or satisfactorily provided for by us;   *   *   *   the intention of this undertaking being to protect and preserve unimpaired the ownership of Messrs. Mosle Brothers in the said property." Thomas M. Barr & Co. thus obtained possession of the coffee subject to or upon the terms of these red-letter receipts. They sold both cargoes to the Central American Trading Company, Limited, upon terms requiring the purchaser to pay as the purchase price whatever should become due from Thomas M. Barr & Co. to the plaintiffs to meet the acceptances. Of these acceptances the latest day stipulated for provision of funds in New York by Thomas M. Barr & Co. to meet the acceptances against the coffee by the J. W. Taylor was the 13th day of May last, and the latest day for the coffee by the Nasmyth was the 17th day of June last. On or about the 18th day of April last, Thomas M. Barr & Co. failed, and made an assignment to Frederick T. Sherman, as assignee for the benefit of their creditors. On the day of this assignment the New York agents of the plaintiffs called upon the assignors and the assignee for the proceeds of the coffee, but failed to obtain them. In the confusion of the occasion Thomas M. Barr & Co. were uncertain to whom the coffee by the Taylor had been sold, and whether, and to what extent, it had been paid for, and declared their inability to respond to the call. The assignee stated that, in so far as he was able to distinguish the proceeds of the sales of the coffees, he would keep them separate, until it could be decided to whom they belonged; but he did not offer or consent to otherwise put the plaintiffs in possession of the proceeds. This action was therefore immediately commenced, with a view to obtain possession of the proceeds of the coffee, or to have them placed in the custody of the court. Shortly after the commencement of the action, and after it was ascertained that the Central American Trading Company was the purchaser of all the coffee, and had made no payment on account of the purchase money, a stipulation was entered into to the effect that the trading company might deposit with the Central Trust Company of New York the purchase price of the coffee from both the steamships, and that such deposits should be to the credit of this action in separate accounts, one for the coffee from the Taylor, and the other for the coffee from the Nasmyth, and should be withdrawn only pursuant to an order of the court in the action. Under this stipulation the trading company deposited with the trust company various sums, intended to be sufficient to cover the requirements of the plaintiffs on their acceptances, and the disposition of these deposits, as well as the other rights and liabilities of the various parties, remains to be considered.

The use by merchants of bankers' credits is an important element of the conduct of commerce, and is calculated to present, from time to time, questions of no little nicety. But arrangements and agreements, such as we find in the present case, have been construed so recently and so fully by the court of appeals that we have rules for

our guidance which can be safely followed. See Drexel v. Pease, 133 N. Y. 129, 30 N. E. 732; Id., 129 N. Y. 96, 29 N. E. 241; Moors v. Kidder, 106 N. Y. 32, 12 N. E. 818; Bank v. Logan, 74 N. Y. 568; Cole v. Mann, 62 N. Y. 1. These cases are uniform in holding that the title remains in the banker until the merchant shall have fulfilled the engagement, under which he procured the credit of the banker for the purchase of the goods; and that, except as to bona fide purchasers from the merchant, not warned of the banker's right or title, possession by the merchant remains that of, or subject to the rights of, the banker. The situation is treated as a species of conditional sale, not consummated until the banker is made good for the use of his credit, and equities are administered accordingly. To the same effect are two recent and well-considered cases, decided by Messrs. William G. Choate and William N. Cromwell respectively. In the Logan Case, supra, there was the hardship that the claimant against the banker was a purchaser at the Produce Exchange, who was nevertheless held to be chargeable with a special indorsement on the bill of lading, signifying what the right of the banker was, and which was considered effectual to put the purchaser on his guard in the absence of protection in this state of the law of market overt. There followed legislation, requiring contracts for conditional sale of property on credit to be filed, and providing that, in the absence of such filing, and where sale is accompanied by change of possession, all reservation to a vendor of ownership shall be "void as against subsequent purchasers and mortgagees in good faith." See chapter 315 of the Laws of 1884, amended in 1885, 1886, 1888, and 1892. It will be observed that the amendments to the act of 1884 exclude from its operation furniture, pianos, bicycles, railway equipments, and a variety of other articles, but leave subject to its operation the great mass of transactions with foreign nations, in which the city and state of New York are so deeply concerned. With the policy of the legislation, however, we are not at liberty to quarrel. It suffices to say that it is limited, in express terms, to bona fide purchasers and mortgagees, neither of whom are before us with equities calling for attention. It is a settled rule of law that neither general creditors nor assignees for their benefit come within that designation as against the holders of specific liens or title and the equities incident to them. There is no room for doubt of the right of the plaintiffs to retain the coffee until made good for their acceptances against it. Nor was their right impaired by the fact that they intrusted Thomas M. Barr & Co. with possession and with power to make sales of it, upon terms reserving to them the title and right of possession of the proceeds, and notwithstanding the fact that upon other and previous occasions such actual possession of proceeds had not been exacted by them from Messrs. Thomas M. Barr & Co. See Moors v. Kidder, 106 N. Y. 46, 12 N. E. 818, and Cole v. Mann, supra. The sudden call of the plaintiffs upon Thomas M. Barr & Co., on the occasion of their failure, for possession of the proceeds, found them unable to meet the call. There is no evidence of any deliberate intention on the part of Thomas M. Barr & Co. to wrong the plaintiffs, but their inability to make good their engagements justified the

plaintiffs in the summary assertion of their rights. So with Mr. Sherman, the assignee. He has exhibited entire good faith on his part, and has shown every disposition to exercise his trust powers in a way to avoid prejudice to the rights of the plaintiffs, in so far as he could do so consistently with his views of trust duty to creditors. While blame is not to be imputed to him for prudence and caution in this regard, yet he has, in effect, not relieved the plaintiffs from the necessity of judicial process for the attainment of their rights. Under somewhat similar circumstances, Mr. Cromwell saw his way to allowance to an assignee out of the fund of both commissions and counsel fees. I find myself unable to follow the precedent. It so happened that at the time of the assignment the coffee remained wholly unpaid for by the purchaser. There had thus been no actual intermingling of the proceeds with the general assets of Thomas M. Barr & Co. A decree in favor of the plaintiffs takes possession of these proceeds, not through the assignment or the assignee, but by superior title, and acquits the assignee of even a momentary responsibility for possession. But if it be conceded that the assignee should be reimbursed for his expenses, and possibly for his labor in guarding the assigned estate and in litigating the claims of the plaintiffs, yet this expense and remuneration should be borne by the assigned estate, rather than by what is decided to have been, from the beginning, lawfully claimable by the plaintiffs. With regard to the costs of the plaintiffs, equity would seem to require that they be borne by Thomas M. Barr & Co. I see no ground for charging them upon either of the other defendants. The Central American Trading Company did all that was incumbent upon them when they deposited the purchase price of the coffee with a depository consented to by the parties; and upon the whole I am inclined to think that, inasmuch as the plaintiffs deferred their claim to possession of the proceeds until the making of the assignment, they should be content to look only to the assignors for the resulting expenses.