## In re CATTUS.

(Circuit Court of Appeals, Second Circuit. December 12, 1910.)

### No. 42.

BANKRUPTCY (§ 140*)—PROPERTY PURCHASED BY BANKRUPT—TRANSFER OF BILLS OF LADING AS SECURITY FOR ADVANCES—TRUST RECEIPTS.

A bankrupt, desiring to import goods, obtained credit from a foreign bank against which he drew for the price to the order of the seller. The draft with bill of lading indorsed in blank or to the order of the bank was forwarded by the seller and accepted payable a certain time after sight. The bank then forwarded the bill of lading indorsed in blank to its agent in New York, who delivered the same to the importer, who signed trust receipts, agreeing to sell the goods for the account of the bank and pay it the proceeds to put it in funds to take up the acceptance at maturity; the receipts reciting that the bankrupt had received from the bank described merchandise which he agreed to hold in trust for the bank as its property with liberty to sell the same, and to pay over the proceeds as soon as received as security for any and all indebtedness of the bankrupt, and, in case the goods were not sold, to insure for the bank's benefit, authorizing it at any time to terminate the trust and recover possession of the goods or the proceeds, and that in case of insolvency all obligations should mature without demand. *Held*, that such trust receipts were effective except as against bona fide purchasers for value, or creditors protected by statute, to retain title to the goods in the bank enforceable against the bankrupt's trustee for the amount of the purchase price.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. § 140.*]

Petition to Revise an Order of the District Court of the United States for the Southern District of New York.

In the matter of John V. A. Cattus, bankrupt. Petition by James H. Hickey, as trustee, to revise an order confirming a report of a special master in reclamation proceedings awarding certain goods and the proceeds thereof to the London & Hanseatic Bank, Limited. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Hastings & Gleason (Mervyn MacKenzie, of counsel), for petitioner.

G. A. Strong, for respondent.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is a petition of a trustee in bankruptcy to revise an order of the District Court confirming the report of the special master in reclamation proceedings awarding to the London & Hanseatic Bank, Limited, certain goods and proceeds of certain goods now in the hands of the trustee, covered by trust receipts given it by the bankrupt, Cattus, and authorizing the bank to sell certain other goods covered by bills of lading in its hands and to apply the proceeds to repayment of advances made by it on account of the bankrupt. The course of dealing between the bank and the bankrupt is according to commercial usage of long standing, under which by a loan of credit a vast amount of business is rapidly and safely done. The particular steps of the method followed are not always the same, but the substantial feature which makes the banker the owner of the goods until the purchase price of them advanced by him is paid is always present. One common method, which seems to have been adopted in this case, is as follows: A merchant who wishes to import goods for which he has not funds to pay obtains credit from a bank to a fixed amount, against which he draws for the price of the goods to the order of the vendor or the vendor draws for the price to his own order. The draft with bill of lading indorsed in blank or to the order of the bank is forwarded by the vendor to the banker for acceptance. The banker accepts the draft payable in one, two, three, or four months, as the case may be, forwards the bill of lading indorsed in blank to his agent in New York, who delivers the same to the importer against a receipt called a trust receipt, whereby he agrees to sell the goods for account of the banker, to pay him the proceeds and so put him in funds to take up the acceptance at maturity.

In this case the bank had accepted drafts to the amount of some £5,-000, had delivered the bills of lading for most of the goods to Cattus against his trust receipts before his adjudication as a bankrupt, and still has in its hands bills of lading for other goods not so delivered.

The form of the trust receipt in this case is as follows:

"New York, ......, 190.. .

"Received from ...... through their representatives Messrs. G. Amsinck & Co., of New York, the following goods and merchandise, their property, specified in the bill of lading per ...... shipped by ...... under credit No. ...... and in consideration thereof, we hereby agree to hold said goods in trust for the above named bankers, and as their property, with liberty to sell the same for their account, and in case of sale to give Messrs. G. Amsinck & Co. the name of the buyers, and to hand them the avails, as soon as received, as security for due provision for the acceptance of the said bankers, on our account, noted at foot; and we further pledge to them said goods and the proceeds of such as security for the payment of any and every other indebtedness of ours to the aforesaid bankers, whether matured or unmatured according to its terms. In case the above mentioned goods are not sold we agree to store and fully insure the same, and hand the storage and insurance papers to Messrs. G. Amsinck & Co., of New York. It is also understood that ...... of Messrs. G. Amsinck & Co., as their representatives, may at will cancel this trust at any time, and repossess themselves of their said prop-

erty in whatever condition it may then be, or of the proceeds of such of the same as may then have been sold, wherever the said goods or proceeds may then be found, and in the event of any insolvency, suspension, or failure, or assignment for benefit of creditors on our part, or of the non-fulfillment of any obligation, or of the non-payment, either at maturity or upon previous demand by the said Messrs. G. Amsinck & Co., of any acceptance made for us under said credit or any other credit issued by . . . . . . or G. Amsinck & Co., on our account, or of any indebtedness on our part to either of them, all obligations, acceptances, indebtedness and liabilities whatsoever shall thereupon (with or without notice) mature and become due and payable.

"We further agree to keep said property fully insured against fire, payable in case of loss to Messrs. G. Amsinck & Co., as representatives of said bankers, we to pay any expenses incurred thereon, the intention of this arrangement being to protect and preserve unimpaired their lien on said property as security for any and all obligations on our part then outstanding.

"£ . . . . . .

"Due . . . . . ."

The structure of the instrument indicates that it has grown gradually, being altered to meet new exigencies, just as we find in many commercial documents like charter parties, masters' drafts, and riders on policies of fire and marine insurance in artistic and inconsistent provisions. This trust receipt contains clauses some of which describe the right of the banker in the goods as property or title and others as a lien. But the inconsistency is apparent rather than real, because, as Judge Hough pointed out in the court below, it admits easily of division into two parts: First, an acknowledgment that the bankers are owners until payment of the acceptance for the purchase price of the specific goods and thereafter they are lienors for any other balance of indebtedness due from the bankrupt, however arising. Inasmuch as the proceeds of all the goods as well as all the goods in specie now in the hands of the trustee and of the banker are insufficient to pay the acceptances for the price of the specific goods covered by the bills of lading attached to the acceptances, we need not consider the clauses of the trust receipt relating to liens for general indebtedness or determine whether such pledge or lien would be good against the trustee.

The purpose of the parties, describe the trust receipt as you will, was to keep the title to the goods in the bankers until their acceptances for the price of the goods were paid. The courts, without always defining exactly what the relation between the parties is or always defining it in the same way, still are astute to protect the rights of the banker in such case. Moors v. Kidder, 106 N. Y. 32, 12 N. E. 818; Drexel v. Pease, 133 N. Y. 129, 30 N. E. 732; National Bank v. Rogers, 166 N. Y. 380, 59 N. E. 922; Moors v. Drury, 186 Mass. 424, 71 N. E. 810; New Haven Wire Co. Cases, 57 Conn. 352, 18 Atl. 266, 5 L. R. A. 300.

It would be most inequitable that the bankrupt or his trustee should escape from the performance of this obligation for the benefit of any one except a bona fide purchaser for value or creditors protected by statute. Extended discussion of the authorities is not necessary. They are considered in the report of A. L. Everett, Esq., as special master, in the case of Charavay & Bodvin v. York Silk Mfg. Co. (C. C.) 170 Fed. 819.

The order is affirmed, with costs.