SUGARLAND INDUSTRIES et al. v. OLD COLONY TRUST CO.*

OLD COLONY TRUST CO. v. SUGARLAND INDUSTRIES et al.

(Circuit Court of Appeals, Fifth Circuit. May 27, 1925.)

Nos. 4306, 4371.

1. Factors ⊂⊃18 — One advancing money to pay for property and taking title is owner as to third parties.

Where one pays for and takes title to goods bought, he acquires the rights of an owner thereof, though the goods were bought at the instance of and for the ultimate use and profit of another, who by agreement is entitled to acquire ownership by complying with stated conditions.

2. Factors ⊂⊃47(2)—Trust certificates held to recognize ownership of bank.

Defendant, a sugar refiner, contracted with an importer of raw sugar to receive and make advances on sugar imported, refine and market the same, and account for the proceeds, less its advances, and refining, handling, and selling charges. Complainant bank advanced the money to pay for certain cargoes imported, and took title thereto, which it transferred to defendant, on payment by it of the agreed advances, taking a trust receipt for each cargo, providing that it should be refined and sold by defendant, and the proceeds accounted for to complainant, after deducting the charges in accordance with defendant's contract with the importer. Held, that as to each cargo there was a separate contract, that as between complainant and defendant complainant was the owner of the sugar, and that defendant was without right to deduct from the proceeds any indebtedness due to it from the importer, arising out of the contract between them.

3. Banks and banking ⊂⊃179—Contract that security given for a debt should be held for any other indebtedness of the debtor held valid.

Where complainant bank advanced money to pay for cargoes of sugar imported, taking title thereto as security, a provision of the contract with the importer that it should also hold such title as security for any other indebtedness of the importer to it held valid and enforceable, as against a third party having claims against the importer.

Appeal and Cross-Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Suit in equity by the Old Colony Trust Company against the Sugarland Industries and others. Decree for complainant, and both parties appeal. Affirmed on defendant's appeal, and modified and affirmed on complainant's appeal.

For opinion below, see 296 F. 129.

*Rehearing denied July 24, 1925. Certiorari denied 46 S. Ct. 26, 69 L. Ed. ——.

H. M. Garwood, of Houston, Tex., F. A. Williams, of Galveston, Tex., and A. M. Waugh, of Houston, Tex. (Baker, Botts, Parker & Garwood, of Houston, Tex., and Williams, Neethe & Williams, of Galveston, Tex., on the brief), for appellants and cross-appellees.

Samuel H. Pillsbury, of Boston, Mass., and Alexander S. Coke, of Dallas, Tex. (Coke & Coke, of Dallas, Tex., and Pillsbury, Dana & Young, of Boston, Mass., on the brief), for appellee and cross-appellant.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This suit was brought by the appellee, Old Colony Trust Company (herein called plaintiff), to enforce its asserted rights under eight trust receipts, all of the same date, July 23, 1920, executed by the Sugarland Industries, which is herein called the defendant. The terms of the trust receipts and the circumstances under which they were issued are shown by the following statement:

On March 10, 1920, E. R. Sherburne Company entered into a written contract with W. T. Eldridge and S. E. Kemper, whereby Sherburne Company agreed to furnish, f. o. b. cars at Sugarland, Tex., at the market price, 300,000 bags of Cuban or Porto Rican raw sugars, 50,000 bags monthly commencing about June 1, 1920, and Eldridge & Kemper agreed to advance 80 per cent. of such price, pay all freight, insurance, and other expenses, refine the sugar for a specified toll charge, sell it, reimburse themselves for their outlays, with interest at a stated rate, and pay the balance, if any, less the amount of the refining tolls to Sherburne Company. Eldridge & Kemper assigned to defendant their interest under that contract. On April 16, 1920, Sherburne Company in writing requested plaintiff to open by mail a documentary credit on New York for $893,727.66 in favor of G. H. Finley & Co., available by sight drafts, for 95 per cent. of the invoice value of 16,500 bags of described Cuban sugar; the application setting out the documents required. Accompanying that application was a written instrument, addressed to plaintiff and signed by Sherburne Company, which contained the following:

"We hereby recognize and admit your ownership in and rights to the possession and disposal of all goods, and the proceeds thereof, for which you may come under any engagements in virtue of said credit, as also to the possession of all bills of lading for and policies of insurance on such goods, until such time as any indebtedness or liability at any time existing as against us in favor of yourselves under said credit, or otherwise, or incurred by you as charges or expenses in respect of any shipments, shall have been fully paid; and any such proceeds coming into the possession of yourselves are to be applied against the acceptances under said credit or against any other indebtedness of ours to you at any time existing, including all expenses incurred by either and commissions of sale and guaranty. Goods imported under said credit shall be paid for or approved security lodged with you before surrender of documents in respect thereof, and in the event you may hereafter intrust any of said goods to us for the purpose of sale or otherwise, we consent that the right of repossession may be exercised at your discretion. Any goods imported under any other credit now or hereafter issued by you for our account, or their proceeds, whether draft against the same shall have been paid or not, or whether the same shall have been delivered to us or not, may be held by you as general collateral security for our account upon the terms and conditions herein named."

That application was granted, and pursuant thereto plaintiff, which then was informed of the above-mentioned contract between Sherburne Company and defendant, issued its letter of credit in favor of G. H. Finley & Co. for the amount stated in the application; the letter of credit specifying the documents to be attached to drafts drawn under the letter of credit. Sherburne Company used that letter of credit to buy 16,375 bags of raw Cuban sugar, which was shipped from Cuba on May 7th on the steamship Olinda, destined to Galveston, at which place it arrived on May 14th. Plaintiff paid a draft for $851,000, drawn by G. H. Finlay & Co. under that letter of credit, and received the consular invoices and bills of lading for the sugar mentioned. On May 18 plaintiff drew its sight draft on defendant for $680,800, its letter of that date stating: "As per the terms of your contract with E. R. Sherburne Company, we will draw our sight draft on you for $680,800 through the Guaranty Trust Company of New York on May 24th, this amount being 80 per cent. of the amount of draft, namely, $851,000 accepted by us against the above-mentioned shipment." On the same day plaintiff's New York correspondent sent to defendant the consular invoices and bills of lading for the sugar, the letter inclosing those documents also inclos-

ing another document, which was referred to in the following part of that letter: "We also hand you herewith our customary trust receipt, which kindly sign and return to us at your convenience."

The defendant retained the invoices and bills of lading so sent to it, and got the sugar called for by those instruments, but did not sign or return the trust receipt mentioned in the just-quoted request. As results of transactions, each of which had a history practically identical with the one above described, except as to dates, amounts, parties to whom letters of credit were issued, and the sellers of the sugar, the defendant acquired a shipment of sugar which reached Galveston by the steamer Lake Dancey on June 2, 1920, and another shipment which reached Galveston by the same steamer on the same date. By a transaction similar to those above mentioned, except that plaintiff had no connection therewith until after the sugar which was the subject of it was shipped from Cuba and documents therefor were presented in this country, defendant acquired a shipment of sugar by the steamer Tuscan, the invoice and bills of lading for which plaintiff acquired upon paying drafts for the price pursuant to a similar application made to it by Sherburne Company on June 22, 1920. After plaintiff, pursuant to a similar application by Sherburne Company, paid drafts for the price of sugar shipped by the steamer James S. Whitney, it (plaintiff) declined to deliver to defendant the documents representing that sugar until defendant expressly agreed to give plaintiff trust receipts therefor, and defendant was so advised by plaintiff's New York correspondent, the National Bank of Commerce. Upon being so advised defendant executed the following:

"July 8, 1920.

"The National Bank of Commerce, 31 Nassau Street, New York City—Gentlemen: In consideration of your forwarding all documents attached to the following drafts: Draft dated July 6th, drawn by the Sugar Planters' Corp. on you for $93,773.58 at 10 days' sight, covering shipment of 1,500 bags Cuban centrifugal sugar per the steamship James S. Whitney. Draft drawn by H. H. Pike & Co., dated July 6th, for $226,928.87, at 10 days' sight, on you, covering 4,000 bags of Cuban centrifugal sugar per the steamship James S. Whitney. The Sugarland Industries will execute a trust receipt covering these same sugars upon receipt of these documents at Galveston, Texas, and will forward said receipt to the Old Colony Trust Com-

pany, Boston, Mass., in whose favor it will be made.

> Sugarland Industries,
> "By W. T. Eldridge."

As the result of an interview between representatives of the defendant and the plaintiff at the latter's office in Boston, defendant, on July 12, 1920, agreed to issue trust receipts to plaintiff covering the shipments of sugar financed as above stated by plaintiff, and the form of such trust receipts was then agreed on. The following is the trust receipt which covered the sugar embraced in the first above mentioned shipment:

"Old Colony Trust Company Agent's Receipt.

"Received from Old Colony Trust Company, hereinafter called 'Trust Company,' the following goods and merchandise, their property, specified in the following bill of lading, per steamship Olinda: 16,375 bags sugar. The bill of lading, and the goods and merchandise represented thereby, and any other documents of title which may be issued in respect thereto, are held by us only as agents for the Trust Company, with the restricted powers herein contained. It is agreed that we are to have the power to manufacture and sell the same, and we agree to hand over the proceeds of such sale, after deducting advances made by us and our charges for refining and handling in accord with contract between the E. R. Sherburne Company, W. T. Eldridge, Esq., and S. E. Kemper, Esq. The Trust Company may cancel this authority at any time and repossess itself of said bills of lading or other documents of title, or the property in whatever condition it may then be, or the proceeds thereof, if sold, or the manufactured goods or their proceeds, wherever the same may be found; and we do hereby assign and transfer to said Old Colony Trust Company the accounts of the purchaser, or purchasers, of said property, to the extent of the purchase price thereof, subject to the provisions of the paragraph next preceding, providing for our advances, cost of refining and handling said sugars.

"We further agree to keep said property insured against fire, payable in case of loss to the Trust Company, with the understanding that they are not to be chargeable for any expenses incurred thereon, the intention of the arrangement being to protect and preserve the title of the Trust Company to the goods, or the proceeds thereof, without expense. No waiver, expressed or implied, of

any provision hereof shall prevent the exercise at any time of any rights conferred by provision so waived.

"Acceptances $851,000.

"Commercial Credit No. 1420.

"Dated July 23, 1920.

'"The Sugarland Industries,

"W. T. Eldridge, Jr., Vice President."

The other seven trust receipts followed the same form. The receipt which covered the shipment last acquired by defendant was for Porto Rican sugar, which reached Galveston after the form of trust receipts was agreed on; that trust receipt being sent to defendant on July 15th. The trust receipts which accompanied the drafts, bills of lading, etc., for the previous shipments, contained no provision as to the defendant deducting from the proceeds of sales of the sugar the amounts of advances made by it and its charges for refining and handling. A letter of defendant to plaintiff of June 19, 1920, contained the following:

"Receipt is acknowledged of your letter of June 19th, inclosing, at the request of E. R. Sherburne Company, receipts covering shipments, documents in connection with which have been forwarded us as follows:

| No. Bags. | Steamer. |
| --- | --- |
| 16,375 | Olinda |
| 20,000 | Lake Dancey |
| 2,000 | Lake Dancey. |

"We do not feel that we should be asked to execute these trust receipts, because against the Olinda cargo we have ourselves advanced $680,800, being in full of our contract obligation of 80 per cent. of the value of these sugars; against the Lake Dancey, 22,000 bags, we have advanced $428,000 and $86,800, and on Tuesday of this week we wired you $250,000, which, together with the $250,000 previously remitted to the Whitney Central Bank of New Orleans, makes a total of $1,014,800, which we have ourselves advanced so far against the sugars from steamships Lake Dancey and Tuscan, although we have no data at this writing which will enable us to know just how these balances have been applied against these two cargoes.

"We trust you will understand our position under the circumstances, and we will further say that we will be very glad to receive any orders from Sherburne & Co. to hold the sugars, or its proceeds, for their account, after our interest in these shipments has been terminated, but in accordance with our contract obligation with Sherburne & Co. we could not afford to issue trust receipts or make advances on any other basis than that which we are obligated to do by contract."

At the time plaintiff granted and complied with each of the above-mentioned applications for letters of credit Sherburne Company was indebted to plaintiff as the result of other transactions having no connection with the purchase or importation of sugar which was acquired by the defendant, and at the date of the decree Sherburne Company, which prior to that date was adjudged bankrupt, owed the plaintiff more than the aggregate amounts, with interest, of defendant's receipts from such sugar in excess of its advances and refining charges. Such other indebtedness remained unsatisfied when the Sherburne Company was adjudged a bankrupt, prior to the date of the decree in this case. In addition to the sugar referred to in the above-mentioned trust receipts, the defendant, under the contract with Sherburne Company, acquired other sugar with which plaintiff had no connection. As results of breaches by the Sherburne Company of its obligations under its contract with defendant, it was liable to the defendant in a sum largely in excess of the amount realized by the latter from sugar furnished by or for Sherburne Company under that contract. On each of six of the eight shipments of sugar with which plaintiff was connected as above stated, the defendant realized an amount in excess of that of its outlays and interest and refining charges on that shipment.

By the decree appealed from plaintiff was awarded the amount of each of such excesses, except where it amounted to more than plaintiff's unpaid advances on that lot with interest thereon. As to three of the lots, such excess exceeded plaintiff's unrepaid outlay, with interest thereon. The defendant appealed from that decree, and complains of it so far as it was in favor of the plaintiff as above stated. The plaintiff sued out a cross-appeal, and complains of the decree so far as it confines plaintiff's recovery to so much of the net sum realized by the defendant from each of said shipments of sugar as equals plaintiff's unpaid outlay on that lot, with interest thereon.

The contentions in behalf of the defendant with reference to the award made against it are indicated by the following statement contained in the brief of its counsel:

"The theory of defendant, the Sugarland Industries, is that these trust receipts were executed as to all of these lots of sugar after they had been received by the Sugarland.

Industries, melted, refined, and partly sold, and that as to all of them the receipts were merely intended to express the understanding that, if there was any amount due E. R. Sherburne Company upon the whole contract after all debits and credits between E. R. Sherburne Company and the Sugarland Industries were adjusted, this would be paid over to Old Colony Trust Company, but if there was a deficit on the whole accounting there was nothing payable to Old Colony Trust Company. The Sugarland Industries contends that at least all sugars in which Old Colony Trust Company claims any interest should be treated as one lot, irrespective of the fact of the different shipments and the different agent's receipts, and that the accounting should be made on the basis of the ascertainment of the general debit or credit on the entire lots. It claims that, as found by the master, the recognition by Old Colony Trust Company, the adoption by it in each of these receipts of the contract with E. R. Sherburne Company, which is a mere factorage contract, the entire course of dealing between the parties shows that the Sugarland Industries, as a factor receiving the sugars for the purpose of refining and selling the same, had a general factor's lien upon the general balance resulting from the entire transaction for the payment of the moneys which it had advanced, refining charges, freights, insurance, and other costs; that the breaking up of the sugar deliveries into different lots was a mere incident, and that the accounting should not be had as to each separate shipment, allowing Old Colony Trust Company a recovery of its 20 per cent. where there had been excesses of receipts from sales over advances and expenses, but that all of the shipments should be considered together, and if sales were in amount less than the expenditures and charges of the Sugarland Industries, no recovery could be had by Old Colony Trust Company."

We have concluded that the above-summarized transactions had legal results materially different from those attributed to them by defendant's counsel. Our conclusions as to the legal results of those transactions, and the grounds of those conclusions, are indicated below.

As between Sherburne Company and plaintiff, the latter's rights in or to the sugar included in the first above mentioned shipment resulted from the contract which was created by its granting the first-mentioned request that it issue a described letter of credit, and from its compliance with the obligations imposed on it by that contract. Obviously it was in accordance with the purpose of the parties to that transaction for the plaintiff to acquire the seller's title to the sugar imported thereunder, and to retain such title and control of the sugar or its proceeds until its acceptances for the price of the sugar and other debt or debts owing to it by the Sherburne Company were paid. Those debts not having been paid, and plaintiff not having consented to relinquish its title, it is not to be doubted that, as against Sherburne Company, plaintiff remained entitled to the sugar included in that shipment or the proceeds of the sale of it.

[1, 2] Where one pays for and takes title to goods bought, he acquires the rights of an owner thereof, though the goods were bought at the instance and for the ultimate use and profit of another, who by agreement is entitled to acquire ownership by complying with stated conditions. Commercial Bank v. Canal Bank, 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25; In re Cattus, 183 F. 733, 106 C. C. A. 171; In re Dunlap Carpet Co. (D. C.) 206 F. 726; New Haven Wire Company Case, 57 Conn. 352, 18 A. 266, 5 L. R. A. 300. The defendant was enabled to get that sugar by its receipt from plaintiff of the consular invoices and bills of lading for it, under circumstances conveying notice of plaintiff's claim to it and of the terms on which plaintiff consented to defendant's getting possession and control of it. Plaintiff's tender to defendant of the documents of title was so made as to show that the former's consent to the latter's retention of those documents was conditioned, not only upon the latter paying the draft for 80 per cent. of the price of the sugar, but also upon it executing a trust receipt recognizing plaintiff's continued ownership of the sugar or the proceeds of the sale of it after it was refined. Defendant was not entitled to retain the documents of title without assenting to the terms on which they were tendered. George F. Hinrichs, Inc., v. Standard Trust & Savings Bank (C. C. A.) 279 F. 382.

The evidence indicates that defendant's failure to sign the instrument which was sent with the documents of title, and which was referred to in the accompanying letter of May 18th as "our customary trust receipt," and its subsequent delay in complying with plaintiff's demands that the latter's rights in the sugar be formally recognized, were not due to a denial that plaintiff had such rights. The evidence is consistent with the conclusion that, from the time defendant was ask-

ed to sign the trust receipt which accompanied the documents of title, its objection to that instrument was the one indicated in its above set out letter of June 19, which was based on the omission from that instrument of any provision for the defendant charging against such sugar or its proceeds the amount of its own outlays thereon. So far as appears, at no time prior to the signing of the trust receipt covering the first shipment did defendant assert a claim inconsistent with the rights of the plaintiff which that instrument recognized. It is to be inferred that that instrument was intended to define the rights of the parties to it from the time one of them acquired from the other the documents of title to the sugar mentioned therein. That instrument explicitly admits plaintiff's ownership of the sugar or its proceeds, and negatives the existence of a right of defendant, as against plaintiff, to subject that sugar or its proceeds to any charges except for defendant's "advances, cost of refining, and handling said sugars."

Evidently the reference in that instrument to the above-mentioned contract with Sherburne Company, to which the defendant became a party by assignment, was not intended to have the effect of entitling defendant to subject the sugar mentioned therein to all demands which under that contract might accrue in its favor against Sherburne Company. The terms of the reference to that contract show that its sole purpose was to indicate what advances and what costs of refining and handling were to be chargeable against the sugar mentioned or its proceeds. Guerini Stone Co. v. Carlin, 240 U. S. 264, 277, 278, 36 S. Ct. 300, 60 L. Ed. 636. Nothing contained in that instrument evidences plaintiff's consent that its rights therein defined be affected or impaired by other contracts or transactions with reference to different lots or shipments of sugar. The plaintiff was under no liability as to any of the several lots of sugar with which it became connected until it entered into dealings in reference solely to a particular shipment of sugar. In no one of the eight transactions did the plaintiff consent that its rights stipulated for therein be affected or impaired by the enforcement of the rights which accrued to defendant in another similar transaction, or by Sherburne Company's breaching of its obligations to defendant under the contract between them.

As to each of the eight shipments in question, defendant obligated itself to account to the plaintiff for the sugar included therein or its proceeds, and by contract limited the credits or offsets allowed to it in such accounting to its own advances on, and specified charges for refining and handling, that particular sugar, with interest on those items. Each of those transactions was separate and distinct from the others, and, as to any one of them, if defendant was liable to the plaintiff under the terms of the contract governing that transaction, plaintiff's right to enforce that liability was not dependent upon Sherburne Company's compliance or noncompliance with its obligations to defendant. Those obligations were none the less enforceable because plaintiff was aware that defendant was getting the sugar for the purpose of refining and disposing of it under the contract between defendant and Sherburne Company. The facts of the case raise no question as to the enforceability of plaintiff's rights under its contracts with Sherburne Company and defendant against strangers to those contracts who, without notice of plaintiff's rights, acquired sugar which was the subject thereof, or proceeds of such sugar. In its accounting with plaintiff for the sugar, or its proceeds, which were the subjects of the several trust receipts, defendant was not entitled to credits or charges in its favor which were not consistent with valid stipulations contained in those instruments.

[3] An effect of the decree was to deny plaintiff's asserted right to charge against the property mentioned in the several trust receipts, the title to which plaintiff acquired in the way above stated, any debt owing to it by Sherburne Company, except that created by plaintiff's outlays on account of that property. Each of the contracts between plaintiff and Sherburne Company provided for the former charging against that property, not only the unpaid part of the cost thereof, but any other debt of Sherburne Company to plaintiff "at any time existing." We are of opinion that that provision was valid and enforceable. Under each of the contracts between Sherburne Company and plaintiff, the latter acquired the seller's title to a lot of sugar upon paying for it, and agreed to Sherburne Company in turn acquiring that title by complying with stated conditions. The validity of such a condition as that which called for the payment by Sherburne Company, in addition to the amount of plaintiff's outlay on the sugar, of other indebtedness owing by it to plaintiff, was affirmed in the well-considered decision in the New Haven Wire Company Case, supra. We are aware of no legal reason justifying the exemption of Sherburne Company from

a compliance with that condition after plaintiff, at the instance of Sherburne Company, and for the purpose of enabling it to get the sugar refined and sold, brought about a delivery of the sugar to defendant in the way above stated.

The decision in the case of Drexel v. Pease, 133 N. Y. 129, 30 N. E. 732, is relied on to support defendant's contention in this connection. That case involved questions as to what a banker was entitled to charge against sardines, the title to which he acquired upon paying drafts for the price drawn under a letter of credit which was issued for the purpose of bringing about the importation of the sardines for the benefit of two persons who were jointly interested therein. While the application for that letter of credit was made by one of those persons, in behalf of both of them, and provided for the banker retaining title to the sardines until a debt having no connection therewith was paid, the evidence showed that the other person so jointly interested did not consent to the banker retaining title until he was paid a debt other than that which resulted from his outlays on the sardines. We understand that the evidence to that effect had controlling influence in bringing the court to the conclusion that the banker was not entitled to charge such other debt against the sardines or the proceeds of them.

The facts of the instant case present no such feature. As above shown, plaintiff paid for and acquired title to the several lots of sugar pursuant to contracts between it and Sherburne Company alone, and the latter expressly consented to the conditions on which it was to get plaintiff's title, including one as to paying a debt or debts other than that resulting from plaintiff paying for the sugar. The difference between the facts of the last-mentioned case and those of the instant one keep the decision in that case from being a persuasive authority in support of the contention made in behalf of defendant.

As Sherburne Company was indebted to defendant, it might have been justifiable to refuse to require defendant to pay to plaintiff more than was necessary to satisfy debts of Sherburne Company to plaintiff, on the ground that defendant should be permitted to retain funds of its debtor, Sherburne Company, which were not applicable to the payment of any demands in favor of plaintiff. But there was no such excess. After deducting from what was realized by defendant from three of the shipments of sugar the amounts of its advances and agreed charges

6 F.(2d)—14

thereon and of the balance owing to plaintiff for its outlays thereon, the sum of $167,411.-09 was left, which was less than the unpaid amount owing by Sherburne Company to plaintiff. For reasons above indicated, we think that the award in favor of plaintiff and against defendant should have included that sum.

We conclude that there was no error in the decree, so far as it was in favor of plaintiff, and that it was erroneous as to the amount awarded to plaintiff against the defendants. The defendant takes nothing by its appeal. On plaintiff's cross-appeal, the decree is modified by making the amount adjudged in favor of plaintiff against defendants the sum of $774,967.15, with interest thereon from September 1, 1920, until paid, at the rate of 6 per cent. per annum. As so modified, the decree is affirmed, with costs against the appellants.

Modified and affirmed.